UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CV-192-R

NORMAN JOHNSON                                                    PLAINTIFF

V.

DIAMOND SHINE, INC. et al.                                     DEFENDANTS

## MEMORANDUM OPINION & ORDER

This matter is before the Court upon Defendants' motion to dismiss Plaintiff's amended

complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  Plaintiff has

additionally filed a motion for a hearing on Defendants' motion to dismiss (DN 20).  These

matters are fully briefed and are ripe for adjudication.  For the following reasons, Plaintiff's

motion for a hearing (DN 20) is DENIED and Defendants' motion to dismiss (DN 14)  is

GRANTED in PART and DENIED in PART.

## BACKGROUND

In the early 1990s, Defendant Scott Soble was employed by his family-owned company,

Ohio Soap Products Company ("Ohio Soap").  At that time, Ohio Soap was primarily a regional

soap supplier to commercial laundries and institutional dishwashing facilities in northern Ohio

and western Pennsylvania.  Secondary to those lines of business, Ohio Soap maintained a car

wash product line, "Diamond Shine," which it distributed to the car wash industry.  Eventually,

Ohio Soap became a distributor for Blue Coral Systems, a company which produced commercial

car wash products, distributing its products to car wash operations around Cleveland, Ohio.

Plaintiff Norman Johnson ("Plaintiff") was the regional vice president for Blue Coral

Systems and was responsible for the distribution relationships east of the Mississippi River.

Thus, Plaintiff worked closely with Ohio Soap and Scott Soble.  After Plaintiff left his

1

employment with Blue Coral Systems, Blue Coral System's relationship with Ohio Soap and Scott Soble deteriorated.

While Ohio Soap was in the process of terminating its distribution relationship with Blue Coral System, Scott Soble approached Plaintiff for advice on protecting its business in the region from the anticipated competition from Blue Coral Systems.  In August of 1997, Scott Soble traveled to Bowling Green, Kentucky to recruit Plaintiff's support and assistance in developing a strategy to compete with Blue Coral Systems.  During one of Scott Soble's visits to Bowling Green, he and Plaintiff allegedly reached an agreement at Plaintiff's home.  According to the terms of the verbal agreement, in return for Plaintiff's assistance in the creation of a distributor business segment of Diamond Shine, Inc. ("Diamond Shine") to distribute its car wash soap products, Plaintiff would receive 6% of gross distributor sales for his lifetime.

After the agreement was made, Plaintiff used "his relationships, marketing expertise, and industry knowledge" to assist Defendants in developing a new segment of distributor sales.  In accordance to the terms of the verbal agreement, Plaintiff received his first check from Diamond Shine on December 12, 1997 in the amount of $181.70.  Thereafter, Defendants honored the agreement for thirteen years and nine months.  In October of 2011, Defendants refused to make further monthly payments to Plaintiff.

Plaintiff then filed this action in Warren Circuit Court, asserting claims for breach of contract, quantum meruit, and promissory estoppel.  Plaintiff further seeks a declaration that he is entitled to receive 6% of monthly gross distributor sales.  Finally, Plaintiff seeks to pierce the corporate veil of Diamond Shine, Inc. and DSM Industries, Inc. in order to hold their shareholders, Scott and David Soble, personally liable.  Defendants removed the action to this Court on the basis of diversity jurisdiction.  Thereafter, Defendants filed a motion to dismiss the

complaint on the basis of lack of personal jurisdiction and on the basis of failure to state a claim upon which relief may be granted.  Plaintiff then filed his first amended complaint as a matter of right, and Defendant filed a motion to dismiss the amended complaint on the same grounds as previously asserted in their prior motion to dismiss.

## DISCUSSION

### I.  Motion for Hearing

Plaintiff, pursuant to Local Rule 7.1(f), requests this Court to conduct a hearing on Defendants' motion to dismiss the amended complaint.  In support of this request, Plaintiff contends that it may be helpful to hear oral arguments in order for the appropriate facts and case law to be considered in connection with the parties' respective positions.  Defendants, in response, contend that the legal issues have been extensively briefed by the parties and that oral argument would be of little or no assistance to the Court.  The Court agrees that oral arguments would not be helpful to a determination of Defendants' motion to dismiss, as the issues have been thoroughly briefed by the parties and the facts are not in dispute for purposes of this motion to dismiss.  Accordingly, the Court will DENY Plaintiff's motion for a hearing.

### II.  Motion to Dismiss Pursuant to Rule 12(b)(2)

Defendants contend that Plaintiff's Amended Complaint should be dismissed because Defendants' contacts with Kentucky are insufficient to allow this Court to exercise personal jurisdiction over them.

#### a.  Standard for Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits a defendant to dismiss for want of personal jurisdiction.  The plaintiff bears the burden of establishing jurisdiction.  *Third Nat'l Bank v. Wedge Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989).  Where, as here, there is

3

no evidentiary hearing on the motion, the plaintiff need only make a prima facie showing of jurisdiction to avoid the motion to dismiss. *Id.* The court must consider the pleading and affidavits in a light most favorable to the non-moving party, and "cannot weigh the controverting assertions of the party seeking dismissal." *Tharo Sys. v. cab Produkttechnik GmbH & Co. KG,* No. 05-3876, 2006 U.S. App. LEXIS 21895 at *5-6 (6th Cir. Aug. 24, 2006) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991); *CompuServe, Inc. v.. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996)), *cert. denied,* No. 06-734, 2007 U.S. LEXIS 135 (U.S. Jan. 8, 2007).

In a diversity action, the Court must look to the law of the forum state to determine whether personal jurisdiction exists. *Intera Corp. v.. Henderson,* 428 F.3d 605, 615 (6th Cir.2005); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). "A Court's exercise of personal jurisdiction over a nonresident defendant is appropriate only if it meets the state's long-arm statute and constitutional due process requirements." *Henderson,* 428 F.3d at 615. Kentucky's long-arm statute has been understood to reach the limit permitted by the Constitution; thus, the single issue is whether the jurisdiction sought is within the requirements of due process.[1] *Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 542–43 (6th Cir.1993).

---

[1] Kentucky's long arm statute provides in pertinent part that:

> (2) (a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or goods in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious

The Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that "traditional notions of fair play and substantial justice are not offended." *Intera Corp.,* 428 F.3d at 615-16 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  The frequency of contacts is not determinative; the defendant's conduct must be such that he or she "should reasonably anticipate being hauled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  "The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 218 (6th Cir.2006); *Fairbrother v. American Monument Found., LLC,* 340 F.Supp.2d 1147, 1153 (D.Colo.2004).  General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624 (6th Cir.1998); *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984).  In order for a nonresident to be subject to the jurisdiction of the court under specific jurisdiction, i.e., for specific claims asserted, those claims must arise out of or be related to activities that were significant and purposely directed by the defendant at a resident of the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 (1985).

---

injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;

5. Causing injury in this Commonwealth to any person by breach of warranty expressly or impliedly made in the sale of goods outside this Commonwealth when the seller knew such person would use, consume, or be affected by, the goods in this Commonwealth, if he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

KRS § 454.210(2)(a)(1)-(5).

**b.  Specific Personal Jurisdiction**

Plaintiff contends that this Court may exercise specific personal jurisdiction over the

defendants.  The following criteria have historically been employed to determine if specific

personal jurisdiction is appropriate:

> First, the defendant must purposefully avail himself of the privilege of acting in
> the forum state or causing consequence in the forum state. Second, the cause of
> action must arise from the defendant's activities there. Finally, the acts of the
> defendant or consequences must have a substantial enough connection with the
> forum state to make the exercise of jurisdiction over the defendant reasonable.

*Tobin,* 993 F.2d at 542–43 (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1460 (6th Cir.

1991)).

As to the first criteria, "[a] defendant has 'purposefully availed' himself of a forum by

engaging in activity that should provide 'fair warning' that he may have to defend a lawsuit

there."  *Youn v. Track, Inc.,* 324 F.3d 409, 418 (6th Cir. 2003).  A single act may be sufficient to

meet the purposeful availment requirement.  *Id.* at 419.  As to the second criteria, "[i]f a

defendant's contacts with the forum state are related to the operative facts of the controversy,

then an action will be deemed to have arisen from those contracts."  *CompuServe, Inc. v.*

*Patterson,* 89 F.3d 1257, 1267 (6th Cir.1996).   This criteria "does not require that the cause of

action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires

only 'that the cause of action, of whatever type, have a substantial connection with the

defendant's in-state activities.'" *Third Natl. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d

1087, 1091 (6th Cir.1989) (quoting *Mohasco,* 401 F.2d at 384 n. 27).

The Sixth Circuit has held that where the first two criteria are met, "an inference arises that this third factor [of reasonableness] is also present." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996).  As such, "only the unusual case will not meet this third criterion." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988).  The determination of whether the Court's assertion of jurisdiction over a defendant would be reasonable is accomplished by considering "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id.*

The Court will separately examine each Defendant's contacts with Kentucky in order to determine whether this Court may exercise specific personal jurisdiction over the respective Defendant.

### i.   DSM Industries

In the complaint, Plaintiff states that DSM Industries, Inc. ("DSM") is a foreign corporation which has contracted and conducted business in the Commonwealth of Kentucky.  In his affidavit, Scott Soble, who is the President of DSM, states that DSM's headquarters and principle place of business are located in Wickliffe, Ohio.  Scott Soble Affidavit, DN 15-1 at ¶ 2.

Plaintiff has put forth no evidence of DSM's contacts with Kentucky in pleadings, affidavits, or otherwise.  Additionally, in his response to Defendants' motion to dismiss, Plaintiff admits that he "is unable to determine the role DSM Industries plays in the operation of Diamond Shine Industries.  However, to the best of Plaintiff's knowledge and belief, the Sobles' various corporate entities are all engaged in the same business industry."  DN 13 at p. 6.

Plaintiff bears the burden of establishing jurisdiction, *Third Nat'l Ban.,* 882 F.2d at 1089 (6th Cir.1989), and has failed to do so with respect to DSM.  There is no evidence DSM

7

purposefully availed itself of the privilege of acting in Kentucky. Plaintiff does not allege that Scott Soble negotiated and formed a contract on behalf of DSM in Kentucky. In fact, Plaintiff has not alleged how DSM is connected to the present controversy or connected to Diamond Shine. DSM and Diamond Shine are separate legal entities and without a showing that DSM was the alter ego or served as the agent of Diamond Shine, Diamond Shine's contacts with Kentucky cannot be imputed to DSM. *See Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Accordingly Plaintiff has presented no evidence that DSM had any contacts with Kentucky and therefore this Court may not assert personal jurisdiction over DSM.

ii. Diamond Shine

In the complaint, Plaintiff states that Diamond Shine is a foreign corporation which has contracted and conducted business in the Commonwealth of Kentucky. Scott Soble, who also is the President of Diamond Shine, states in his affidavit that Diamond Shine has no offices or employees in Kentucky, does no advertising in Kentucky, and maintains no P.O. Boxes, phone listings, or bank accounts in Kentucky. Scott Soble Affidavit, DN 15-1 at ¶ 4. Diamond Shine does not conduct regular business in Kentucky, but does sell a limited amount of products to car washes in Kentucky, amounting to less than 4% of Diamond Shine's revenues. *Id.* Furthermore, Diamond Shine has no registered agent for service in Kentucky and no certificate of authority to conduct business in Kentucky. *Id.* at ¶ 4-5. Finally, according to Scott Soble's affidavit, Diamond Shine has not required Plaintiff to perform activities or services in Kentucky on their behalf. *Id.*

First, for this Court to assert specific personal jurisdiction over Diamond Shine, "the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing

a consequence in the forum state." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  "The Supreme Court has emphasized, with respect to interstate contractual obligations, that 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)) (internal quotation marks omitted).  However, the mere existence of a contract with a citizen of the forum state is insufficient to confer personal jurisdiction over a foreign defendant. *Burger King*, 471 U.S. at 478.  Thus, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479.

Here, Scott Soble, on behalf of Diamond Shine, traveled to Kentucky to negotiate and form a verbal agreement with Plaintiff, a Kentucky citizen.  According to the terms of the agreement, Diamond Shine sent payments to Plaintiff in Kentucky for nearly fourteen years. Thus, Diamond Shine "reached out" to Kentucky to negotiate and to create a substantial continuing relationship and obligation with Plaintiff, a citizen of Kentucky.  *See Burger King*, 471 U.S. at 473; *LAK, Inc.,* 885 F.2d at 1300.  Accordingly, the Court finds that Diamond Shine purposefully availed itself of the privilege of acting in Kentucky.

Second, for this Court to assume specific personal jurisdiction over Diamond Shine, the cause of action must arise from Diamond Shines' activities in Kentucky.  This requirement is readily met with respect to Diamond Shine.  Plaintiff asserts claims for breach of contract, quantum meruit, and promissory estoppel – all arising out of Diamond Shine's negotiation and

formation of the verbal agreement with Plaintiff.  Accordingly, the Court finds that the cause of action alleged in the complaint arises from Diamond Shine's contacts in Kentucky.

Finally, Diamond Shines' acts and the consequences of those acts must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over Diamond Shine reasonable.  Because the first two factors are met, "an inference arises that this third factor [of reasonableness] is also present."  *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996).  Defendants contend that the exercise of personal jurisdiction over them would not comport with traditional notions of fair play and justice.  Specifically, Defendants contend that they would suffer an enormous burden if they were forced to litigate in Kentucky instead of Ohio.  Defendants further contend that the only connection between this dispute and Kentucky is that Plaintiff lives in Kentucky, which is too tenuous of a connection to overcome the overwhelming interest of Ohio, where all of the defendants reside and do business.

That Defendants may have to travel to Kentucky, a bordering state, is insufficient to show that this Court's exercise of jurisdiction would be unreasonable.  *See Youn*, 324 F.3d at 420 (citing *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 911-12 (6th Cir.1988) (permitting personal jurisdiction in Michigan over Illinois defendant)).  The Court does not agree with Defendants' characterization of the Kentucky connection as tenuous.  As discussed above, Defendants traveled to Kentucky to negotiate and form a verbal agreement with a citizen of Kentucky.  Plaintiff has a substantial interest in obtaining relief and clearly "Kentucky has a legitimate interest in seeing that its citizens receive compensation for their injuries, especially when . . . the brunt of the injury may be felt in Kentucky . . . ." *Auto Channel, Inc. v. Speedvision Network, L.L.C.,* 995 F.Supp. 761, 766 (W.D. Ky.1997).  Balancing these factors, the Court finds that its exercise of personal jurisdiction over Diamond Shine is reasonable.

iii.   <u>Scott Soble</u>

Defendant Scott Soble, who is the President of Diamond Shine and the President of DSM, is a resident of Ohio.  Plaintiff contends that Scott Soble's contacts with Kentucky – namely, seeking out Plaintiff's advice and assistance in Kentucky, negotiating and forming the verbal agreement in Kentucky, and sending payments to Plaintiff in Kentucky – are sufficient for this Court to maintain specific personal jurisdiction over him.

The Court must determine whether Plaintiff has put forth evidence to establish that Scott Soble, *individually*, is subject to the personal jurisdiction of this Court.  Unlike other courts, the Sixth Circuit has rejected the fiduciary shield doctrine, which states that "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981).  Instead, the Sixth Circuit holds that "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants.  Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Balance Dynamics Corp. v. Schmitt Indus., Inc.,* 204 F.3d 683, 698 (6th Cir. 2000).

Here, Scott Soble was actively and personally involved in the conduct giving rise to Plaintiff's claim.  Presumably based upon his past experience working with Plaintiff, Scott Soble traveled to Kentucky to seek out Plaintiff's advice and to negotiate a verbal agreement between Plaintiff and Diamond Shine.  Additionally, Scott Soble signed the letter – which was sent to

11

Plaintiff in Kentucky – purporting to terminate any alleged agreement between Diamond Shine and Plaintiff.  DN 12-1.  Thus, Scott Soble purposefully availed himself of the privilege of acting in Kentucky.  As discussed above, Plaintiff's cause of action arises from Scott Soble's contacts with Kentucky.  Finally, Scott Soble's connection with Kentucky is substantial enough to make this Court's exercise of personal jurisdiction reasonable.  Although Defendants argue that they "would suffer an enormous burden if they were forced to litigate in Kentucky," the Sixth Circuit has deemed specific jurisdiction proper even when a defendant would be forced to travel.  *See Youn*, 324 F.3d at 420.  Additionally, as discussed above, Plaintiff and Kentucky have a strong interest in exercising jurisdiction.  Accordingly, Scott Soble's contacts with Kentucky are not so attenuated so as to offend traditional notions of fair play and substantial justice and the Court finds that it may exercise personal jurisdiction over Scott Soble.

iv.  <u>David Soble</u>

With respect to David Soble, who is also a resident of Ohio, Plaintiff provides no foundation regarding his contacts with Kentucky.[2]  In his response to Defendants' motion to dismiss, Plaintiff states that David Soble, along with Scott Soble, owns Diamond Shine and DSM, exercises control over both companies, and had the ability to control the specific activity upon which Plaintiff's claim relies.  DN 13 at p. 6.  David Soble, in his affidavit, states that he has not performed work in Kentucky and that he has not conducted regular business in Kentucky.  David Soble Affidavit, DN 15-2 at ¶ 2.  David Soble further states that he has no offices or employees in Kentucky, does no advertising in Kentucky, solicits no business in Kentucky, receives no direct sales revenue from Kentucky, and receives no substantial revenue from goods used or consumed or services rendered in Kentucky.  *Id*. at ¶ 3.  Finally, David Soble states that

---

[2] Plaintiff's complaint states only that David Soble is a resident of Ohio and is subject to the jurisdiction of this Court.  DN 12 at ¶ 5.

he has never requested or required Plaintiff to perform activities or services in Kentucky. *Id.* at ¶ 4.

"It is settled that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974). Thus, Plaintiff must put forth some evidence that David Soble was actively and personally involved in the conduct giving rise to his claim and that the exercise of personal jurisdiction over him would not offend traditional notions of fair play and substantial justice. *See Balance Dynamics*, 204 F.3d at 697-98. Plaintiff has not alleged that David Soble personally took any action connected to Kentucky. Because the record is devoid of evidence relating to David Soble and his contacts with Kentucky, the Court cannot find that David Soble purposefully availed himself of the privilege of acting in Kentucky.

In such circumstances, this Court could find sufficient contacts by David Soble only by attributing Diamond Shine's corporate actions to him. In his complaint, Plaintiff states that he is unaware whether the agreement he entered into with Scott Soble was ever ratified by Diamond Shine and DSM and thus seeks to pierce the corporate veils of Diamond Shine and DSM to hold the individuals and/or shareholder who entered the contract personally liable. This Court has endorsed the use of the alter ego theory to exercise personal jurisdiction over an individual premised on his corporate contacts with the forum state where the complaint alleges facts sufficient to prove that a corporation served as an alter ego for the individual's benefit. *Med. Distribution, Inc. v. Quest Healthcare, Inc.*, 3:00CV-154-H, 2002 WL 32398447 (W.D. Ky. Feb. 1, 2002).

Recently, the Kentucky Supreme Court has explained the equitable doctrine of piercing the corporate veil:

> Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation.  In short, the limited liability which is the hallmark of a corporation is disregarded and the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence.   A successful veil-piercing claim requires both this element of domination and circumstances in which continued recognition of the corporation as a separate entity would sanction a fraud or promote injustice.

*Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 155 (Ky. 2012).

Thus, a court proceeding under the later ego formulation must resolve two dispositive element: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice."  *Id*. at 165.

Here, Plaintiff alleges that Diamond Shine and DSM are the alter egos of the shareholders and that "the shareholders have exercised control over the corporation in such a way as to harm the Plaintiff and that refusal to disregard the corporate entity would subject the Plaintiff to unjust loss."  DN 12 at ¶ 25-26.  Plaintiff is "uncertain and skeptical that the shareholders have observed the formalities of corporate existence."  *Id*. at ¶ 27.  Plaintiff further alleges that "the corporations are influenced by the owners to the extent that there is such a unity of ownership and interest that the separateness between individual ownership and corporate ownership has ceased."  *Id*. at ¶ 28.

The facts alleged by Plaintiff in his complaint, even if true, do not meet the standards for piercing the corporate veil because they do not demonstrate that Diamond Shine is an alter ego for its shareholders, David and Scott Soble.  "Ownership and control of a corporate entity by the persons sought to be held liable is . . . not sufficient by itself for denial of entity treatment." *Poyner v. Lear Sieglar, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) (citing *C.L. & L. Motor Express Co. v. Achenbach*, 82 S.W.2d 335 (1935)).  Plaintiff's bald assertions of unity of ownership and

interest and his skepticism of whether the formalities of corporate existence were observed are insufficient to state a claim.  *See Southeast Texas Inns, Inc. v. Prime Hospitality Corp.,* 462 F.3d 666, 678 (6th Cir. 2006) (applying Delaware and Tennessee law which the court found to be strikingly parallel).

Additionally, Plaintiff's piercing the corporate veil claim fails because the facts alleged do not demonstrate that the shareholders used Diamond Shine to promote an injustice.  "The 'injustice' must be more than the breach of contract alleged in the complaint . . . or even the burden of brining the action in another forum."  *Id.* at 675 (discussing Delaware law).  In *Inter-Tel Technologies*, the Kentucky Supreme Court recognized several scenarios sufficient to satisfy the "promoting injustice" factor.  360 S.W.3d 152 at 167-68.  One such situation involves a parent corporation causing a subsidiary's liability and then rendering the subsidiary unable to pay the liability.  *Id.*  Another such situation involves "'an intentional scheme to squirrel assets into liability-free corporations while heaping liabilities upon an asset-free corporation.'"  *Id.* at 168 (quoting *Sea-Land Services, Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991)).  The Court went on to warn that "[c]ourts should not pierce corporate veils lightly but neither should they hesitate in those cases where the circumstances are extreme enough to justify disregard of an allegedly separate corporate unity."  *Id.*

Such circumstances have not been alleged here.  Plaintiff does not allege that the shareholders misused Diamond Shine's limited liability to injure Plaintiff or to sanction a fraud or an injustice.  Additionally, Plaintiff does not allege that Diamond Shine is without assets or insolvent or that Diamond Shine cannot pay any judgment which may be entered against it in Plaintiff's favor.  Even accepting Plaintiff's allegation as true, Plaintiff has provided no basis to pierce the corporate veil of Diamond Shine and hold David Soble personally liable.  Without a

viable veil piercing claim, it is clear that David Soble does not have minimum contacts with Kentucky for this Court to exercise personal jurisdiction over him.  Accordingly, this Court may not assert specific personal jurisdiction over David Soble.

### c.   General Personal Jurisdiction

Plaintiff additionally maintains that Defendants have minimum contacts with Kentucky so as to permit this Court's exercise of general personal jurisdiction.  Because this Court has determined that this Court may exercise specific personal jurisdiction over Diamond Shine and Scott Soble, the Court will limit its discussion of whether this Court may exercise general personal jurisdiction over DSM and David Soble.

"A federal court has general jurisdiction when the defendant's contacts with the forum state are 'substantial' and 'continuous and systematic,' so that the state may exercise personal jurisdiction over the defendant even if the action does not relate to the defendant's contacts with the state."  *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003).  As evidence of Defendants substantial and continuous and systematic contacts with Kentucky, Plaintiff reiterates that Scott Soble came to Kentucky to negotiate a contract with Plaintiff and that all payments to Plaintiff were sent to him in Kentucky.  Plaintiff further states that Diamond Shine consistently does business in Kentucky, conducting sales in Northern Kentucky and selling their products to a distributor in Louisville, Kentucky who sells the products to car wash operations in Kentucky. Finally, Plaintiff states that Diamond Shine has a distributor in Clarksville, Tennessee, which sells Diamond Shine's products to car wash operations in the south central region of Kentucky. According to Plaintiff, when these car wash operations are in need of additional products, they contact Diamond Shine's headquarters in Ohio to place an order and to pay for the products, and the Clarksville distributor merely delivers the product.

Plaintiff has put forth no evidence of David Soble's and DSM's contacts with Kentucky. As discussed earlier when this Court determined that it could not exercise specific personal jurisdiction over these defendants, Plaintiff has not alleged facts specific to David Soble or DSM. The connection between these Defendants and this dispute are unclear.  However, also as explained above, Diamond Shine's and Scott Soble's contacts with Kentucky cannot be imputed to David Soble and DSM in the absence of a viable veil-piercing claim.  Accordingly, this Court may not exercise general personal jurisdiction over DSM and David Soble.

**III.** **Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)**

Defendants additionally move this Court to dismiss Plaintiff's claims for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### a.   Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted).   A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

### b. Analysis

#### i. <u>Statute of Frauds</u>

Defendants contend that, even assuming the truth of the allegations in the complaint, Plaintiff fails to state a claim because the alleged oral contract is unenforceable under Kentucky's statute of frauds. Kentucky's statute of frauds bars the enforcement of certain oral contracts as contrary to public policy, such as agreements which are not to be completed within one year of their formation. Kentucky's statute of fraud provides in pertinent part that "[n]o action shall be brought to charge any person . . . upon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, [or] agreement . . . be in writing and signed by the party to be charged . . . ." KRS § 371.010(7). "'In construing the Statute of Frauds, the general rule is that, if a contract may be performed within a year from the making of it, the inhibition of the Statute does not apply, although its performance may have extended over a greater period of time.'" Sawyer v. Mills, 295 S.W.3d 79, 84 (Ky. 2009) (quoting *Williamson v. Stafford,* 190 S.W.2d 859, 860 (1945)). However, when "it was contemplated by the parties that the contract would not, and could not, be performed within the year, even though it was *possible* of performance within that time, it comes within the inhibition of the Statute." *Id.* The Court must focus on the terms of the agreement and the parties' intentions when determining whether a contract could be completed within one year so as to

18

avoid the statute of frauds.  *Id*. at 85 (citing *Kentucky Utilities Co. v. Hurst*, 269 S.W. 525 (1925)).

In the complaint, Plaintiff alleges that he and Scott Soble, on behalf of Diamond Shine, formed an "oral agreement . . . wherein it was agreed that in exchange for Plaintiff's efforts and assistance in establishing, reforming, and/or improving a car wash soap product line, Plaintiff would receive six (6%) of gross monthly distributor sales for so long as he was alive."  DN 12 at § 18.  Defendants contend that the alleged oral agreement, as pled in the complaint, cannot be enforced because a lifetime contract cannot be performed within a year.

In response, Plaintiff argues that the oral contract could have been performed within a year because he could have died within a year.  The Court agrees.  A majority of cases hold that a promise of performance during the life a specified person is not within statute of fraud provisions dealing with promises not to be performed within a year.  9 Williston on Contracts § 24:5 (4th ed.).  In *Waggener v. Howsley's Administrator*, a Kentucky Court of Appeals held that a promise to pay $10 a month for life was not within the statute of frauds because the contract "might have been performed within a year from the time of its making by reason of the death of [the promise], before the termination of one year . . . ."  175 S.W. 4, 6 (Ky. App. 1915).  *See also Doherty v. Doherty Ins. Agency*, 878 F.2d 546 (1st Cir. 1989) (applying Massachusetts law and holding that a contract for lifetime employment is not subject to the statute of frauds because the contract may be performed within one year if the employee happens to die within the year); *Young v. Ward*, 917 S.W.2d 506 (Tex. App. 1996) (holding that an alleged oral promise of the defendant to pay a retirement pension of $2,000 per month for the life of the plaintiff was not within the statute of frauds); *Leonard v. Rose*, 422 P.2d 604 (Cal. 1967) (holding that an "oral agreement to support a person for the balance of his life, or for some other indefinite period of

19

time, must be regarded as having been made with a view to the possible death within a year of the person for whose benefit the agreement was made" and enforcing a promise to pay $200 a month for life).  Accordingly, the alleged oral contract to pay Plaintiff 6% of proceeds for as long as he was alive could have been performed within one year had Plaintiff died within one year of its formation.

Defendants argue that an unpublished decision of the Kentucky Court of Appeals, *Rains v. Patrick*, 2008 WL 5836529 (Ky. App. Oct. 3, 2008) compels a contrary finding.  In *Rains*, the plaintiff alleged that the city, in exchange for a sewer easement, agreed to provide him with free sewer service for life.  The only writing offered as proof of such an agreement was the sewer easement, which did not mention free sewer service.  *Id*. at *6.  The court held that a writing evidencing the alleged oral contract was required both because it was a contract for the sale of real estate and because the contract was not to be performed within one year of its formation.  *Id*. at *6-8.  Although the *Rains* court appears to hold that the lifetime contract in that case could not be performed within one year, a more careful examination of the *Rains* decision shows that the court did not base its decision on such a finding.  Besides one conclusory sentence, the *Rains* court did not discuss whether the alleged lifetime contract could be performed within one year. Instead, the Court had already determined that the alleged contract was a contract for the sale of real estate and therefore must be in writing and found that there was no proof that the city ever agreed to obligate itself to give the plaintiff free lifetime sewer service in exchange for the sewer easement.  *Id*. at *7-8 (finding that "the City would not have offered [the plaintiff] free sewer service to induce him to donate a sewer easement").  For these reasons, and because the bulk of

case law supports Plaintiff's position that a lifetime contract to pay a sum of money is not within the statute of frauds, the Court finds that *Rains* does not apply here.[3]

In sum, because Plaintiff could have died within one year of the formation of the alleged contract, it was not an oral contract that was not to be performed within one year.  Thus, the alleged oral agreement between Plaintiff and Diamond Shine is not barred by Kentucky's statute of frauds.

### ii.   Piercing the Corporate Veil

Defendants further contend that Plaintiff's complaint fails to allege facts sufficient to allow for the imposition of liability against David Soble and Scott Soble.  As discussed above, a court proceeding under the later ego formulation must resolve two dispositive element: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice."  *Inter-Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152, 165 (Ky. 2012).

---

[3] Additionally, the lack of case law condemning the holding in *Rains v. Patrick* does not change the Court's determination that *Rains* does not apply.  *Rains* is an unpublished decision not to be published, and Kentucky CR 76.28(4)(c) provides that such opinions "shall not be cited or used as biding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court."  Despite Defendants claim that they were unable to find any other pertinent published Kentucky case dealing with oral lifetime contracts, the Court was able to find several pertinent published cases. *See e.g., Waggener v. Howsley's Adm'r*, 175 S.W. 4, 6 (Ky. App. 1915); *Bootes v. Gwinner's Adm'r*, 64 S.W.2d 904, 905 (Ky. 1933) (enforcing an agreement to provide a home for the decedent for the remainder of his life as not within the statute of frauds); *McDaniel v. Hutcherson*, 124 S.W. 384 (Ky. App. 1910) (enforcing an agreement to furnish the plaintiff a home during the defendant's life) (overruled in part on other grounds); *Stowers v. Hollis*, 83 Ky. 544 (Ky. App. 1886) (stating that a verbal contract to support a child might have been fulfilled within a year from the making of it by the death of the child).  Given the facts that *Rains* is an unpublished decision and that other published cases do address whether lifetime contracts fall within the statute of frauds (and find that they do not), it is unsurprising that the holding in *Rains* has gone unchallenged.

Plaintiff contends that the corporate veils of Diamond Shine and DSM should be pierced to hold their shareholders, Scott Soble and David Soble, personally liable.  In support of this theory, Plaintiff states that Diamond Shine is a mere instrumentality and alter ego of the Sobles.  According to Plaintiff, the Sobles exercise general control over both companies and had the ability to control the specific activity upon which Plaintiff's claim relies.

As discussed above, even assuming that the Plaintiff's allegations are true, there is no basis for piercing the corporate veil of Diamond Shine and DSM.  "Ownership and control of a corporate entity by the persons sought to be held liable is . . . not sufficient by itself for denial of entity treatment."  *Poyner v. Lear Sieglar, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976) (citing *C.L. & L. Motor Express Co. v. Achenbach*, 82 S.W.2d 335 (1935)).  Additionally, the facts alleged do not demonstrate that the Sobles used Diamond Shine to sanction a fraud or to promote an injustice.  A mere breach of contract does not constitute an "injustice."  *See Southeast Texas Inns,* 462 F.3d at 675.  Thus, even accepting Plaintiff's allegation as true, Plaintiff has provided no basis to pierce the corporate veil of Diamond Shine and DSM.  Accordingly, Plaintiff has failed to state a claim against Defendants under a theory of piercing the corporate veil.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED  that Plaintiff's motion for a hearing (DN 20) is DENIED.  IT IS FURTHER ORDERED that Defendants' motion to dismiss (DN 14) is GRANTED in PART and DENIED in PART.  Plaintiff's claims against David Soble and DSM Industries, LLC are DISMISSED for lack of personal jurisdiction.  Plaintiff's claim against the remaining Defendants to pierce the corporate veil is DISMISSED for failure to state a claim upon which relief may be granted.  Defendants' motion to dismiss Plaintiff's breach of contract claims against the remaining Defendants is DENIED.